```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATHANIEL JAY,
                                              MEMORANDUM AND ORDER
                    Petitioner,              Case No. 04-CV-5589 (FB)

     -against-

JAMES CONWAY, Superintendent,

                    Respondent.
------------------------------------------------------------x
```

ORIGINAL

*Appearances:*
For the Petitioner:                         For the Respondent:
NATHANIEL JAY, *pro se*                     KATHLEEN M. RICE, ESQ.
#05-A-0151                                  District Attorney, Nassau County
Attica Correctional Facility                By: Cristin N. Connell
P.O. Box 149                                262 Old Country Road
Attica, NY 14011-0149                       Mineola, NY 11501

**BLOCK, Senior District Judge:**

Petitioner Nathaniel Jay ("Jay"), *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Jay presents three arguments: (1) that there was no probable cause to detain him before trial without a preliminary hearing; (2) that a show-up identification was without counsel, unduly suggestive, and tainted an in-court identification; and (3) that the state trial court improperly charged the jury. Because it is meritless, Jay's petition is denied.

I

Jay was convicted of robbery in the first degree and criminal use of a firearm in the first degree for his role in the robbery of a jewelry store in Nassau County. The evidence presented at trial included testimony by the owner of the jewelry store, Lance

Stein ("Stein"), regarding a pretrial identification of Jay as one of the robbers; Stein also made an in-court identification of Jay.

Stein testified that he had about fifteen to twenty seconds to observe Jay and the other two men in his store and that, during the robbery, Jay was five to ten feet away from him. Jay and the other men wore hoods tied tight around their heads. The hoods all covered the hair, ears, and part of the chin; they did not cover the eyes, nose, or mouth. It was a sunny day and the store was brightly lit.

Jay was apprehended by police shortly after fleeing the scene of the robbery. A police officer told Stein that the police "had some individuals that they thought may have been involved" in the robbery. Trial Tr. at 339. Stein was driven to the location of Jay's arrest, a few blocks from the store, where he identified Jay as one of the men who had robbed him approximately forty-five minutes earlier. At this show-up, Jay was handcuffed and two police officers were standing near him. Stein identified Jay immediately upon arriving at the scene of Jay's arrest, only "a second or two after the car stopped." *Id.* at 301.

Stein's testimony revealed inaccuracies in his call to 911 immediately after the robbery. In the call, he said that all three men had guns, although there was only one gun. He also said "no" when asked by the 911 operator if he knew what the robbers looked like. Trial Tr. at 351.

The state court's charge to the jury explained that the jury must consider Count One, robbery, before considering Count Two, illegal use of a firearm, and if the jury acquitted Jay of Count One, it must also acquit him of Count Two. During jury deliberations, the jury sent out a note asking to have Count Two explained again. After

2

receiving the note, the judge further explained, *inter alia*, that a verdict of guilty on the charge of illegal use of a firearm was only possible if the jury also found Jay guilty of robbery. *See* Trial Tr. at 1188-89.

Jay raised all three of the arguments in the present petition on direct appeal; they were all rejected as meritless. *See People v. Jay*, 838 N.Y.S.2d 596 (2d Dep't).

## II

*Habeas* relief is not available under The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. 104-132, 110 Stat. 1214 (1996) unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Carey v. Musladin*, 549 U.S. 70 (2006) (holding that "clearly established Federal law" means the holdings of the Supreme Court, narrowly construed). Where the state court adjudication was on the merits, AEDPA requires the *habeas* court's review to be "highly deferential." *Davis v. Grant*, 532 F.3d 132, 139 (2d Cir. 2008). To warrant *habeas* relief under AEDPA, the state court's application of federal law must have been "objectively unreasonable," *Harris v. Alexander*, 548 F.3d 200, 203 (2d Cir. 2008) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)); it "must reflect some increment of incorrectness beyond error, although that increment need not be great," *id.* (quoting *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005)).

### A. Pretrial Detention

Jay claims that he was denied a preliminary hearing on the issue of whether there was probable cause to detain him prior to trial. Even assuming that Jay was subjected

to pretrial detention without probable cause—which the Court does not find Jay to have shown—he would not be entitled to *habeas* relief. "[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause for pretrial detention, but not a full, adversarial hearing). In light of this Supreme Court precedent, the circumstances of Jay's pretrial detention do not furnish grounds for finding his conviction to be in violation of federal law.

**B. Pretrial Identification**

Evidence of a pretrial identification should be excluded where the procedure used to secure the identification is "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987). Whether the due process rights of the person identified have been violated "depends on the totality of circumstances surrounding" the identification. *Id*. The Supreme Court has held that suggestiveness alone does not necessarily require exclusion of the identification; the identification may still be admitted if the procedure was reliable. *See Neil v. Biggers*, 409 U.S. 188, 199 (1972). *Biggers* provided a list of factors to be considered in determining whether an identification procedure was reliable despite being suggestive:

> the opportunity of the witness to view the criminal at the time

> of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199-200.

In its determination regarding the admissibility of Stein's identification of Jay shortly after the robbery, the trial court found: "The show up identification of defendant Jay, made approximately forty-five minutes after the robbery and approximately one-third of a mile away from the jewelry store was not unduly prejudicial to the defendant." *People v. Jay*, No. 1818N-03, at 9 (N.Y. Sup. Ct. Nassau County June 14, 2004).

The circumstances of the show-up were somewhat suggestive, since the police had told Stein they thought they had apprehended the robbers and Jay was presented to Stein handcuffed standing next to police officers. Looking to the *Biggers* factors, Stein had at most twenty seconds to observe Jay's features, and his attention was divided among the three men in the store at that time. Furthermore, the inaccuracy in his description during the 911 call detracts from the reliability of the identification. On the other hand, Stein was able to view Jay from a close distance, the identification came soon after the crime, and Stein was quick to identify Jay at the show-up, indicating no lack of certainty.

In sum, some *Biggers* factors weighed in favor of suppression, while others did not. It is not the Court's role on *habeas* review to decide how the balance should tip; rather, "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322,

5

340 (2003). The Court cannot say that the state court's conclusion that the factors suggesting reliability outweighed those suggesting unreliability was "objectively unreasonable." *Harris*, 548 F.3d at 203.

As for Jay's contention that Stein's identification of him at the scene of his arrest was unconstitutional because counsel was not present, "the right to counsel . . . attaches only to corporeal identifications conducted 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Moore v. Illinois*, 434 U.S. 220, 226 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682 (1972)). At the time of Stein's identification, no adversary proceedings had been initiated against him. Therefore, he had no right to counsel at the show-up.

## C. Jury Instructions

When the constitutional validity of a jury instruction is questioned in a collateral attack, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned . . . ." *Leecan v. Lopes*, 893 F.2d 1434, 1443-44 (2d Cir.1990) (quoting *Henderson v. Kibbe*, 431 U.S. 145 (1977)) (internal citation and quotation marks omitted).

Jay's argument seems to be that when the jury asked for further explanation of Count Two, it was inappropriate for the judge to mention Count One again. Jay apparently believes that the jury's question about Count Two indicated that it was finished deliberating on Count One; therefore, since the jury might have decided to acquit him on

6

Count One, the judge's mention of Count One might have induced the jury to reconsider their decision and convict Jay of robbery. Jay's argument is not persuasive. Even if there were some reason to believe that the jury's note indicated it had decided Count One, that it was considering Count Two showed that it must have decided to find Jay guilty of Count One. Regardless, the state judge's charge, "viewed as a whole," *Durden v. Greene*, 492 F. Supp. 2d 414, 421 (S.D.N.Y. 2007) (citing *Boyde v. California*, 494 U.S. 370, 378 (1990)), cannot be said to have encouraged a particular verdict on either count. The Court finds nothing erroneous in the state court's jury instructions, and certainly does not find a violation of clearly established federal law.

## CONCLUSION

The petition is denied. A certificate of appealability will not be issued because Jay has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

/S/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 9, 2009